# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 10-1128

L.E.P.S.

VERSUS

R.G.P.

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CATAHOULA, NO. 19,698
HONORABLE GLEN WADE STRONG, DISTRICT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of Marc T. Amy, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED AS AMENDED.**

**Philip Allan LeTard**
**Attorney at Law**
**P. O. Box 187**
**Vidalia, LA 71373**
**(318) 336-8990**
**Counsel for Defendant/Appellant:**
**R.G.P.**

**Richard L. Fewell, Jr.**
**Law Office of Richard Fewell**
**1315 Cypress St.**
**West Monroe, LA 71291**
**(318) 388-3320**
**Counsel for Defendant/Appellant:**
**R.G.P.**

**James Edward Paxton**
**Attorney at Law**
**P. O. Box 97**
**St. Joseph, LA 71366**
**(318) 766-4892**
**Counsel for Defendant/Appellant:**
**R.G.P.**

**Paul A. Lemke, III**
**Owens & Lemke, Inc.**
**P. O. Box 595**
**Harrisonburg, LA 71340**
**(318) 744-5431**
**Counsel for Plaintiff/Appellee:**
**L.E.P.S.**

**GREMILLION, Judge.**

R.G.P. appeals the trial court's judgment awarding L.E.P.S. $64,845.12 in back due child support for their triplets.[1] For the following reasons, we affirm as amended.

## PROCEDURAL AND FACTUAL BACKGROUND

We meet again in the ongoing custody and child support litigation concerning the triplets born of the marriage of R.G.P. and L.E.P.S. R.G.P is now deceased following a late-night singular motor vehicle accident on April 9, 2010.

L.E.P.S. filed for divorce from R.G.P. in 1996, which was granted in May 1997.[2] [3] At that time, R.G.P. was ordered to pay $1,140 per month in child support pursuant to a consent agreement between the parties. By September 2002, L.E.P.S. had filed a "Rule for Contempt and to Fix Interim Child Support" requesting that R.G.P. be held in contempt for unilaterally reducing child support payments to $600 per month beginning in December 1998. A January 2003 judgment set child support from September 2002 until January 2003 at $1,420 per month. Effective January 1, 2003, child support was set at a rate of $1,500 per month until further order of the court.

On July 11, 2008, L.E.P.S. filed a "Petition to Set Child Support and For Judgment of Arrearages." Following an August 13, 2008 trial, the trial court named R.G.P. the primary custodial parent, which we reversed on appeal in July 2009. *See*

---

[1] Pursuant to Uniform Rules—Courts of Appeal, Rule 5-2, we use initials throughout to protect the identity of the minors.

[2] Although we have reviewed the original record before, it is not now before us and the factual background is gleaned from the trial court's "Written Reasons for Judgment."

[3] We note that R.G.P. specifically requested that the appeal record consist of only the pleadings and hearing transcripts from January 1, 2010 to present.

*L.E.P.S. v. R.G.P.*, 08-1349 (la.App. 3 Cir. 6/3/09), *writ denied*, 09-1429 (La. 7/1/09), 11 So.3d 498. We remanded to the trial court to establish a visitation schedule and to fix child support.

The sole issue of child support and arrearages was the subject of the most recent trial in January 2010. As the trial court noted, "It is incredulous that these parties have litigated incessantly over the past thirteen (13) years but never established a final child support obligation." In March 2010, the trial court awarded final child support in the amount of $1,580 retroactive to September 10, 1996. The record reflects a lengthy explanation of how the trial court arrived at this figure and how it determined the $64,845.12 figure owed by R.G.P. retroactively to September 1996, most notably finding that R.G.P. had long evaded producing documents pertaining to his income as well as underreporting his income.

In March 2010, R.G.P. filed a Motion for New Trial, which was denied. R.G.P. appealed to this court. After his death in April 2010, R.G.P.'s mother, executor of his estate, filed a Motion to Substitute his estate in May 2010. L.E.P.S. filed a Motion to Dismiss Appeal citing R.G.P.'s failure to comply with La.Code Civ.P. art. 2121 in that an order was not included in the filing. R.G.P. filed an Exception of Prescription in October 2010, urging that retroactivity from 1996 was in contravention of La.Code Civ.P. art. 3501.1.[4] He argued he should only be assessed child support arrearages from 1998 through 2008. R.G.P. further assigns as error:

1.  The trial court's finding of an increase in child support from March 12, 2010 retroactive from the initial filing for divorce on September 10, 1996.

2.  The trial court's failure to consider the income of L.E.P.S's

---

[4]We note that although R.G.P.'s estate had been substituted as the proper party, all documents continue to refer to R.G.P. and we will do the same.

current husband.

3.      The trial court's determination of R.G.P.'s income based on the bank deposits rather than the testimony.

4.      The trial court's determination that undervalued L.E.P.S.'s ability to work.

5.      The trial court's error in assessing the extraordinary expenses created by L.E.P.S's move to Arizona.

## DISCUSSION

### *Motion To Dismiss Appeal*

L.E.P.S. urges that we should dismiss R.G.P.'s appeal because it was untimely in that R.G.P. had until July 16, 2010 to timely file the original appeal with the clerk of court, but did not do so until July 19, 2010. She urges that the original fax filing to the clerk on July 16, 2010 was deficient because it did not contain an order of appeal from the trial court pursuant to La.Code Civ.P. art. 2121. Pursuant to La.Code Civ.P. arts. 3943 and 3942, R.G.P. had thirty days from the notice of judgment denying his motion for new trial, which was mailed on June 16, 2010, to file his appeal.

It is true that R.G.P.'s fax-filed "Motion and Order for Devolutive Appeal" dated July 16, 2009 did not contain an order. R.G.P. only filed the necessary "Order" on July 19, 2010. However, as long as the motion for appeal was timely filed, errors pertaining to the order have been held to not be fatal to the appeal. *See Traigle v. Gulf Coast Aluminum Corp.*, 399 So.2d 183 (La.1981); *E.D. Haber Heating & Air Conditioning, Inc. v. Koppenal,* 399 So.2d 1224 (La.App. 1 Cir. 1981). Thus, we decline to dismiss the appeal.

### *Retroactivity*

The supreme court recently addressed the retroactivity of a child support

3

judgment in *Vaccari v. Vaccari*, 10-2016 (La. 12/10/10), 50 So.3d 139, clarifying that a trial court can make a child support judgment retroactive to the date of judicial demand, *even though an interim award has been in effect between the parties*, and expressly overruling jurisprudence, including those cases cited by R.G.P., to the contrary.

Louisiana Revised Statute 9:315.21 addresses the retroactivity of a child support judgment and states:

A. Except for good cause shown, a judgment awarding, modifying, or revoking an interim child support allowance shall be retroactive to the date of judicial demand, but in no case prior to the date of judicial demand.

B. (1) A judgment that initially awards or denies final child support is effective as of the date the judgment is signed and terminates an interim child support allowance as of that date.

(2) If an interim child support allowance award is not in effect on the date of the judgment awarding final child support, the judgment shall be retroactive to the date of judicial demand, except for good cause shown, but in no case prior to the date of judicial demand.

C. Except for good cause shown, a judgment modifying or revoking a final child support judgment shall be retroactive to the date of judicial demand, but in no case prior to the date of judicial demand.

D. Child support of any kind, except that paid pursuant to an interim child support allowance award, provided by the judgment debtor from the date of judicial demand to the date the support judgment is signed, to or on behalf of the child for whom support is ordered, shall be credited to the judgment debtor against the amount of the judgment.

E. In the event that the court finds good cause for not making the award retroactive to the date of judicial demand, the court may fix the date on which the award shall commence, but in no case shall this date be a date prior to the date of judicial demand.

F. (1) Notwithstanding any other provision of this Section, if a party has been directly affected by Hurricane Katrina, a judgment modifying a final child support judgment may be made retroactive to August 26, 2005, if judicial demand is made prior to April 15, 2006.

(2) Notwithstanding any other provision of this Section, if a party has been directly affected by Hurricane Rita, a judgment modifying a final child support judgment may be made retroactive to September 20, 2005, if judicial demand is made prior to April 15, 2006.

In *Vacari,* 50 So.2d 139, the supreme court summarized the lack of clarity in the statute with regard to the retroactivity of child support judgments when an interim order is in effect:

Subsection B, which is most directly relevant to our discussion, treats a final award of support differently depending on whether there is an interim award in effect when the final judgment is signed. If there is no interim award in effect, § 9:315.21(B)(2) requires a final award to be made retroactive to the date of judicial demand.

We are more concerned with § 9:315.21(B)(1), which controls where, as here, an interim award is in effect when the final judgment is signed. Subsection B(1) states a final judgment is "effective as of the date the judgment is signed" and it "terminates an interim child support allowance as of that date." This clearly explains the rule going forward from the date the judgment is signed-the interim award will no longer be in effect, the final judgment will be. However, it does not directly address the retroactive effect, if any, of such a judgment. This is an apparent lacuna in the statute-although the statute does not expressly permit a court to render such a final judgment retroactive, neither does it expressly forbid it.

The answer lies in § 9:315.21(C), which provides an order "modifying or revoking a final child support judgment shall be retroactive to the date of judicial demand." If an order modifying a final support judgment may be made retroactive, *a fortiorari*, the judgment itself may be made retroactive. . . .

. . . .

We therefore hold, upon a showing good cause, a trial court may order a final child support award retroactive to the date of judicial demand even though there has been an interim award in effect. Any cases holding the contrary are hereby overruled.

*Id.* at 143-144.

Accordingly, the trial court did not err in making the March 12, 2010 judgment retroactive to the date of judicial demand in September 1996. This assignment of

error is without merit.

## *Prescription (Arrearages)*

R.G.P. argues that, pursuant to La.Civ.Code art. 3501.1, the arrearages he was assessed retroactively to 1996 are prescribed. Louisiana Civil Code Article 3501.1 states that "[a]n action to make executory arrearages of child support is subject to a liberative prescription of ten years." As pointed out by L.E.P.S., the exception was erroneously filed in the name of a deceased person, rather than the substituted party, his estate. Nevertheless, the estate was substituted in the record. Although the exception was not properly filed by the estate, the exception has merit. L.E.P.S. filed her "Petition to Set Child Support and For Judgment of Arrearages" on July 11, 2008. Thus, according to La.Civ.Code art. 3501.1, the action is subject to a ten year prescriptive period. Accordingly, R.G.P.'s arrearages are assessed retroactively back to July 11, 1998. Any claims for arrearages prior to that point are prescribed.

L.E.P.S. argues that the two stipulated judgments entered into between she and R.G.P. in 1997 and 2002 served to interrupt prescription. We disagree. There is no jurisprudential basis cited for that argument, nor can we find one. Additionally, each installment due under a support order is a separate and distinct obligation. *See Jones v. City of New Orleans*, 09-0369 (La.App. 4 Cir. 9/2/09), 20 So.3d 518, *writ denied*, 09-2156 (La. 12/18/09), 23 So.3d 947. Prescription is interrupted by acknowledgment pursuant to La.Civ.Code art. 3464. We find no evidence in the record indicating that R.G.P. acknowledged even one delinquent installment much less everything he owed. The stipulated judgments are not even in the record.

6

Further, the jurisprudence of this court has held that "[p]ayments made pursuant to an order which modifies a previous award of child support do not serve to interrupt prescription for claims based upon the previous order to pay child support." *Goss v. Goss*, 95-1406, p.5 (La.App. 3 Cir. 5/8/96), 673 So.2d 1366, 1369. Likewise, the stipulations allegedly in the 1997 and 2002 agreements cannot serve to interrupt prescription unless they clearly acknowledge each separate and distinct monthly installment the parent in arrears has paid or underpaid.

Thanks to the meticulous work of the trial court, we have sufficient information in the record to recalculate the arrearages owed. The trial court determined that from October 1996 until December 1998, R.G.P. paid $1,140 per month, resulting in an underpayment of $440 per month. It further found he was owed a credit for September 1996 in the amount of $81.40. The total arrearages it arrived at for the October 1996 through December 1998 period was $10,918.60. Because all claims before July 1998 are prescribed, the $440 shortage is only attributable to R.G.P. for the six-month period beginning July 1998 and ending December 1998. Accordingly, six times $440 equals $2,640 minus a credit of $81.40 for a total of $2,558.60 owed by R.G.P. for this period instead of $10, 918.60. Thus, the total arrearage of $64,845.12 is reduced by $8,441.40 to equal $56,403.72. Accordingly, the judgment is amended to show that R.G.P. owes L.E.P.S. $56,403.72 in arrearages.

***Income Sharing***

R.G.P. asserts that the trial court erred in failing to consider the income of J.S., L.E.P.S.'s current husband. Louisiana Revised Statute 9:315(C)(5)(c) provides (emphasis added):

> The court *may also consider* as income the benefits a party derives from expense-sharing or other sources; however, in determining the benefits of expense-sharing, the court shall not consider the income of another spouse, regardless of the legal regime under which the remarriage exists, except to the extent that such income is used directly to reduce the cost of a party's actual expenses.

The trial court did consider J.S.'s income as follows:

> Defendant argues that [J.S. and L.E.P.S.'s] monthly expenses total $11,415.00 and [J.S.'s] income is $64,866.00 per year. Therefore, the difference between income and expenses, $5,705.50 per month, should be allocated to plaintiff. This argument is without merit. First, plaintiff has only been married to [J.S.] since August, 2006, although she lived with him occasionally between August, 2003 and August, 2006. Secondly, there were seven or more people living in the [S] household in 2006-2008. A portion of the household expenses would have to be allocated to each person who resided in the home. Also, plaintiff was married to a [Mr. F] between November, 1998 and June, 2001 and there is no financial information on Mr. [F]. Rather than speculate on expense-sharing allocations, the Court is of the opinion that allocating the amount that plaintiff normally earned is more reasonable. The Court fixes the amount allocated to plaintiff at $1,500 per month.

We review child support determinations using the manifest error standard of review and we will not disturb the trial court's support order unless it committed manifest error or an abuse of discretion in its determination. *State, Dep't of Social Services, v. L.T., Jr.*, 05-1965 (La. 7/6/06), 934 So.2d 687. Having reviewed the record, we find no error or abuse of discretion in the trial court's consideration of J.S.'s income. This assignment of error is without merit.

### R.G.P.'s Income

R.G.P. asserts that "there is no evidence in the record that the bank deposits in Appellant's checking account were income rather than loans." On the contrary, it is readily apparent that R.G.P.'s income far exceeded that which he reported to the court or the IRS. That R.G.P. attempts to classify these regular large deposits as "loans" is a fiction. The trial court found that the majority of the

8

unexplained "loans" were actually transfers from other accounts over which R.G.P. had control. The trial court further found that R.G.P. "obviously had income from other sources." It arrived at a figure of $350,007.50 in unexplained deposits for the years 2004-2007, which it then divided by four years for a total of $87,501.75 per year. Having reviewed the bank records and the testimony, we find no manifest error in the trial court's determination. Accordingly, this assignment of error is without merit.

### *L.E.P.S.'s Under-employment*

In this assignment of error, R.G.P. argues that the trial court erred in attributing only $1,500 per month in income to L.E.P.S., stating that the trial court did not consider what a teacher would earn in Yuma, Arizona, where she lives, but instead based its calculation on what a teacher earns in Catahoula Parish. R.G.P. further argues that the trial court based the amount on her employment income from years past instead of on a current teacher's salary. R.G.P. put on no evidence of what this amount should be, and we find no error in the trial court's use of $1,500 as the amount of income attributed to L.E.P.S. This assignment of error is without merit.

### *Transportation Costs*

R.G.P. states, "defendant shows that [L.E.P.S.] should be cast with 58.79% of the transportation costs associated with the visitation of the minor children with their father." Clearly, the children will not be visiting him prospectively, so we can only assume that R.G.P. wants a credit for past transportation costs because L.E.P.S. is the party who moved away. R.G.P. submits the amount of $3,974 was spent on airplane tickets in the past traveling from Arizona to Louisiana. There was little testimony at the trial regarding past transportation costs and we find no error in

9

the trial court's refusal to reimburse R.G.P. some percentage of these costs. This assignment of error is without merit.

## CONCLUSION

The judgment of the trial court is affirmed as amended. Any claims before July 11, 1998, are prescribed and the arrearages are recalculated at $56,403.72. The judgment is affirmed in all other respects. All costs of this appeal are assessed against the Estate of R.G.P.

**AFFIRMED AS AMENDED.**