# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-374


**STATE OF LOUISIANA, DEPARTMENT OF CHILDREN AND FAMILY SERVICES, CHILD SUPPORT ENFORCEMENT/IV-D**

**VERSUS**

**DAVID ALAN LANDRY**

**consolidated with**

**22-375**

**DAVID LANDRY**

**VERSUS**

**BETTINA GARZA**

**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, LASES NO. 002642114-01
CONSOLIDATED WITH CIVIL DOCKET NUMBER 69,984
HONORABLE STEPHEN B. BEASLEY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***


**JOHN E. CONERY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Shannon J. Gremillion, John E. Conery, and Candyce G. Perret, Judges.

**AFFIRMED.**

**Kenneth P. Haines**
**Weems, Schimpf, Haines, Shemwell & Moore**
**912 Kings Highway**
**Shreveport, Louisiana  71104**
**(318) 222-2100**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **David Alan Landry**

**Gregory H. Batte**
**Sockrider, Bolin, Anglin & Batte**
**327 Crockett Street**
**Shreveport, Louisiana  71101**
**(318) 221-5503**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **David Alan Landry**

**Joseph "J.R." Stevens**
**Attorney at Law**
**690 San Antonio Avenue, Suite B**
**Many, Louisiana  71449**
**(318) 701-8127**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **David Alan Landry**

**James S. Seaman**
**Assistant District Attorney**
**495 South Capitol Street**
**Many, Louisiana  71449**
**(318) 256-6246**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana, Department of Children and Family Services,**
     **Child Support Enforcement**

**David C. Hesser**
**Hesser & Flynn, L.L.P.**
**215 Ansley Boulevard**
**Alexandria, Louisiana  71303**
**(318) 542-4102**
**COUNSEL FOR APPELLEE:**
     **Bettina Garza**

**CONERY, Judge.**

The trial court issued separate judgments relating to child support and custody issues involving the minor child of the parties, David Alan Landry and Bettina Garza. Mr. Landry appeals both judgments. Ms. Garza has answered the appeal seeking modification of the child support award. By request of the parties, this court consolidated the matters for review. We address the issues under this single cover and, for the following reasons, affirm each judgment.

## FACTS AND PROCEDURAL HISTORY

The record indicates that Mr. Landry and Ms. Garza were previously married and domiciled in Texas during the course of their marriage. One child was born of the marriage, Brooklyn Taylor Landry (born November 6, 2015). The parties were divorced by a December 13, 2018 judgment (the Texas Judgment) rendered in the County Court at Law for Starr County, Texas. The Texas Judgment awarded the parties joint custody of Brooklyn. As domiciliary parent, Mr. Landry was given the exclusive right to designate the primary residence of the child without regard to geographic location.

Mr. Landry moved to Sabine Parish and filed a September 10, 2019 petition in the Eleventh Judicial District Court in Sabine Parish titled "Petition to Register and Enforce Texas Decree of Custody, to Establish Louisiana as the Proper Jurisdiction for Modification of Custody, Request Modification of Custody, Request for Setting of Child Support, Contempt of Court and Request for Attorney Fees and Court Costs, the Appointment of a Mental Health Professional and Discovery." The matter proceeded under Docket Number 69,894.

The following day, on September 11, 2019, the trial court signed an Order establishing Louisiana as the proper jurisdiction to hear the modification and

ancillary family law matters. The trial court Order adopted and registered the Texas Judgment for enforcement and modification pursuant to the Uniform Child Custody Jurisdiction Enforcement Act, La.R.S. 13:1801, *et seq.*

On March 27, 2020, Mr. Landry filed a "Petition for Ex Parte Temporary Child [Custody]" pursuant to La.Code Civ.P. art. 3945,[1] claiming that Ms. Garza failed to return Brooklyn in compliance with the week on/week off visitation schedule prescribed by the Texas Judgment. That same day, the trial court signed an order temporarily restricting Ms. Garza's visitation to supervised visitation on weekends.

On June 5, 2020, the trial court signed an Interim Consent Judgment which vacated the earlier temporary custody order and appointed Dr. John Simoneaux, Ph.D., to perform mental health evaluations on the parties in order to aid the trial court in making the requested change of custody ruling. The Interim Consent Judgment also reinstated the week on/week off visitation schedule between the parties as previously ordered by the Texas Judgment.

The record reflects that Ms. Garza filed an application for child support with the Department of Child and Family Services (DCFS) on July 31, 2020 in Sabine Parish. DCFS filed a Rule to Show Cause on October 23, 2020, asking the trial court to determine the amount of child support payments due from Mr. Landry for

---

[1] Louisiana Code of Civil Procedure Article 3945 states, in pertinent part:

　　B.　　An ex parte order of temporary custody of a minor child shall not be granted unless:
　　(1)　　It clearly appears from specific facts shown by a verified petition or by supporting affidavit that immediate and irreparable injury will result to the child before the adverse party or his attorney can be heard in opposition;
　　(2)　　The applicant's attorney certifies to the court, in writing, either:
　　(a)　　The efforts which have been made to give the adverse party reasonable notice of the date and time such order is being presented to the court;
　　(b)　　The reasons supporting his claim that notice should not be required.

2

Brooklyn and to order an Immediate Income Assignment pursuant to La.R.S. 46:2326.3. The matter addressing the income assignment was assigned Lases Number 002642114-01, Sabine Parish.

On October 5, 2021, a hearing was held before the District Court Hearing Officer, assigned to hear child support issues. At the hearing, the parties were allowed to place in the record stipulations, offerings, and argument on the issue of child support. On October 13, 2021, the District Court Hearing Officer issued an interim recommendation to the trial court setting child support at $3,049.66 per month in favor of DCFS for the benefit of Brooklyn effective October 23, 2020, the date of filing of the Rule To Show Cause by DCFS. The amount of the child support award was based on Worksheet B of the Child Support Guidelines, as the parties equally shared custody pursuant to the Texas Judgment.

The District Court Hearing Officer additionally awarded Ms. Garza $500.00 per month for travel expenses for the time period beginning October 23, 2020 to July 31, 2021, to compensate her for transporting Brooklyn to and from Texas and Louisiana. Both parties timely filed objections to the recommendation of the District Court Hearing Officer.

Thereafter, the trial court conducted multi-day, contradictory hearings on the consolidated cases involving both the request for modification of child custody, Docket Number 69,894, and on issues surrounding Mr. Landry's child support obligations, Lases Docket Number 002642114-01. The trial court resolved both by separate February 14, 2022 judgments.

As to custody, after a full trial on the merits in Sabine Parish Docket Number 69,984, the trial court granted in part and denied in part the modification of the Texas Judgment, ordering that:

2. Mr. Landry and Ms. Garza continue to have joint legal custody of Brooklyn Taylor Landry (DOB 11/6/2015);

3. Mr. Landry remains domiciliary parent of Brooklyn;

4. The parties are to continue exercising physical custody of Brooklyn on a seven-day rotation beginning at 3:00 pm on Fridays;

5. Ms. Garza is to exercise physical custody in Louisiana;

6. The parties are to submit a Joint Custody Implementation Plan within 30 days of the signing of this judgment;

7. A separate judgment regarding child support shall be signed upon presentation by the State of Louisiana, consistent with the Reasons for Judgment issued herein.

The trial court ultimately designated the Judgment as final pursuant to La.Code Civ.P. art. 1915(B).[2]

By a separate but corresponding February 14, 2022 Judgment in Sabine Parish Docket Number 002642114-01, the trial court set forth the child support order as follows:

1. The Defendant is ordered to pay child support in the amount of **$3,049.66 per month,** effective **October 23, 2020,** plus the five percent (5%) expedited process fee as authorized by LA.R.S. 46:236.5(C), payable to DCFS (Department of Children and Family Services) P.O. Box 260222 Baton Rouge,

---

[2] As an initial matter, even though no separate "joint implementation order" was issued by the trial court, La.R.S. 9:335 does not require a particular form for the rendition of a joint custody implementation order. With respect to what must be included within a joint custody implementation order, La. R.S. 9:335 expressly states: "The implementation order *shall allocate the time periods during which each parent shall have physical custody of the child* so that the child is assured of frequent and continuing contact with both parents. … The implementation order shall allocate *the legal authority and responsibility of the parents*." La. R.S. 9:335(A)(2)(a) and (3) (emphasis added). *See Hodges v. Hodges*, 15-0585 (La. 11/23/15), 181 So.3d 700.

The trial court's written Judgment in this case meets those requirements.

4

LA 70826-0222, for the support of Brooklyn Taylor Landry, DOB 11/6/2015.

2.    Defendant is ordered to obtain and maintain health insurance on the minor child, if health insurance becomes available at a reasonable cost through an employer.

3.    An Income Assignment Order issue(s) forthwith.

The judgment further set forth Mr. Landry's responsibilities to DCFS in connection with the payment of his child support and ordered that the costs of court be cast equally between the two parties.

In accompanying "Written Reason's For Judgment[,]" the trial court explained that it had accepted the recommendation of the District Court Hearing Officer and set child support in the sum of $3,049.66 per month, effective October 23, 2020, plus the 5% administrative fee allowed by law. The trial court also accepted Worksheet B attached to the District Court Hearing Officer's recommendation and ordered Mr. Landry to maintain Brooklyn's health insurance and pay all out-of-pocket medical expenses.

The trial court, however, rejected the District Court Hearing Officer's recommendation that Ms. Garza receive a monthly travel allowance of $500.00, or any amount for travel, for the period specified in the recommendation. The trial court found that since Ms. Garza knew she may have to travel to and from Brooklyn's residence in Louisiana when she entered the stipulated Texas Judgment in 2018, she therefore accepted her responsibility for the travel expense involved. Ms. Garza did not appeal this portion of the trial court's ruling.

As briefly stated above, Mr. Landry has appealed the respective judgments rendered regarding support and child custody. Ms. Garza has answered Mr.

5

Landry's appeal of the order of child support. We address the now-consolidated appeals in turn.

**Docket Number 22-374 – Child Support**

**ASSIGNMENT OF ERROR**

By a single assignment of error addressing the trial court's determination of the amount of child support, Mr. Landry alleges that "[t]he trial court committed legal error by setting child support pursuant to a flawed Worksheet B calculation." (Capitalization removed.)

**LAW AND DISCUSSION**

*Standard Of Review*

We first note that "[w]e review child support determinations using the manifest error standard of review and we will not disturb the trial court's order unless it committed manifest error or abuse of discretion in its determination." *L.E.P.S. v. R.G.P.*, 10-1128, p. 8 (La.App. 3 Cir. 3/16/11), 59 So.3d 523, 528-29 (citing *State, Dep't of Soc. Servs. v. L.T., Jr.*, 05-1965 (La. 7/6/06), 934 So.2d 687), *writ denied*, 11-0770 (La. 5/27/11), 63 So.3d 999.

*Child Support - Quantum*

Mr. Landry first asserts that he should have sole custody of Brooklyn and urges that if the court had granted his request for sole custody, he would not owe Ms. Garza any child support. However, after a full trial on the merits, the trial court maintained the week on/week off joint custody of Brooklyn, with Mr. Landry as the domiciliary parent, so Ms. Garza is entitled to payment of child support through DCFS. At the hearing held before the District Court Hearing Officer, counsel for DCFS stated:

[A]s I understand the issues that are before the Court today, there was an initial request by Mr. Landry that he should not pay any child support, you know, I'm not sure that's a great look considering his income level and that's his child, and that's certainly not something we would agree with.

The record is clear that Mr. Landry's primary intent was to obtain full custody and not have to pay <u>any</u> child support.

In the alternative, Mr. Landry further argues that the trial court should not have accepted the calculations on Worksheet B contained in both DCFS' Post-Trial submission, the District Court Hearing Officer's Recommendation, and specifically adopted by the trial court. In its Post-Trial Memorandum in the trial court, DCFS provided the figures used in reaching the child support award in this case, where the gross income of the parents exceeds $40,000.00, the highest level specified in the child support guidelines schedule. La.R.S. 9:315.19.

In this case the monthly gross income of Ms. Garza was determined to be $2,858.33. This amount was based on her training as a medical assistant and phlebotomist.[3] Due to traveling to and from Texas to Louisiana, she has been unable to work at either job, but has the ability to earn the amount calculated. Mr. Landry's monthly gross income was calculated at $57,064.00.[4] Therefore, the couples' total combined monthly gross income was determined to be $59,922.33 by the Hearing Officer.

---

[3] The Hearing Officer based this figure on the U.S. Bureau of Labor Statistics (5/20/20) for both a medical assistant and a phlebotomist.

[4] This is an extremely conservative calculation based on Mr. Landry's wealth. Mr. Landry's tax returns, which were submitted into evidence at the October 5, 2021 hearing on the child support issue in connection with his answers to interrogatories indicate that Mr. Landry's combined gross and net income beginning with the year 2016 was over a million dollars; 2017 his combined gross and net income was over $1.2 million; 2018 his gross and net income was over $4.5 million. Also submitted into evidence was his 2019 return where his gross and net income was over $4 million and the 2020 return where his gross and net income was $1,119,537. Further, at oral argument, Ms. Garza's counsel claimed that Mr. Landry has assets of approximately $11 million on which he made $1.4 million in interest.

The highest level of combined monthly gross income specified in the schedule of basic child support contained in La.R.S. 9:315.19 is $40,000.00. This amount requires an award of combined child support in the amount of $2,816.00 per month for one child. However, La.R.S. 9:315.13 also states:

> B. If the combined adjusted gross income of the parties exceeds the highest level specified in the schedule contained in La.R.S. 9:315.19, the court:
>
> (1) **Shall use its discretion in setting the amount of the basic child support obligation in accordance with the best interest of the child and the circumstances of each parent as provided in Civil Code Article 141, but in no event shall it be less than the highest amount set forth in the schedule**[.][5]

(Emphasis added.)

Mr. Landry argues that the amount determined by the trial court of $3,049.66 per month, and giving Mr. Landry credit for the child's monthly health insurance premium of $477.73, was flawed and an error of law. Considering the adjusted monthly gross income of the parties is $59,922.33, which is above the highest level in the schedule of $40,000.00, DCFS in its Post-Trial Memorandum indicated how the child support award was calculated and stated:

> We have hypothetically continued the schedule of basic child support obligation beyond the highest level and a worksheet B (50/50 shared custody) was prepared assessing Ms. Garza at $2,858.33/m and Mr. Landry at $57,064/m, this would result in a recommended guideline

---

[5] Louisiana Revised Statutes 9:315.13, cmt. (2001) provides:

> If the combined adjusted gross income of the parties exceeds the highest amount provided for in the schedule, the court is to exercise discretion in setting the amount of child support guided by the best interest of the child and the circumstances of each party under Civil Code Article 141. Article 141, which governs the award of child support at divorce, contains first principles: child support is to be determined **based upon the needs of the child as measured by the standard of living enjoyed by the child while living with his intact family and upon the ability to pay of each of the parents. In no case, however, may the amount awarded be less than the highest amount specified in the schedule.**

(Emphasis added.) There is no maximum amount in the schedule.

child support amount of **$3,049.66/m**, giving Mr. Landry credit for the child's monthly insurance premium of $477.73.

Based on the calculations submitted by DCFS, we find that the trial court did not abuse its discretion in ordering Mr. Landry to pay $3,049.66 monthly in child support for Brooklyn. The amount for one child at the $40,000.00 level on the child support schedule is $2,858.33. DCFS calculated the amount commensurate with the combined adjusted monthly gross income of the parties of $59,922.33, which was determined to be $3,527.06. Giving Mr. Landry credit for the $477.73 in health insurance payments for the child, the trial court fixed child support at $3,049.66 per month, a figure that we find to be very low considering Mr. Landry's wealth.

Further, after Mr. Landry was given the credit for the health insurance payment, the result is an amount of only $191.33 over the $2,858.33 for one child at the $40,000.00 base level on the child support schedule. Based on the foregoing, we find no merit in Mr. Landry's assertion that the amount of the child support award is flawed and constituted legal error by the use of Worksheet B.

*Answer to the Appeal - Retroactivity of the Award of Child Support*

By her Answer, Ms. Garza seeks to change the retroactive date of child support award from October 23, 2020, the date of filing of DCFS' Rule to Show Cause. She instead seeks a retroactive date of either the original filing for a determination of child support by Mr. Landry on September 10, 2019, or Ms. Garza's own filing for child support on July 1, 2020.

At the hearing before the District Court Hearing Officer there was a determination that DCFS was the proper party plaintiff, as argued by counsel for DCFS:

> In terms of retroactivity and what should be applied, my understanding was it would be that if there had been a previous child

support order and the State stepped in to enforce it, we would go by whatever that previous court had done, retroactive child support, child support arrearages, and child support [award].

For this interim purpose, I think it's certainly fine to go by the State's actual filing date of October 23, 2020, with the Court reserving the right to, of course, if the district court does find [it] retroactive to the original 2019 filing of Mr. Landry that it be modified. … but for today's purposes, we would recommend our filing date. [October 23, 2020]

Accordingly, based on the determination at the hearing on October 5, 2021 that the proper party to set and enforce child support was DCFS, we are constrained to find that the trial court did not abuse its vast discretion in making the child support award retroactive to October 23, 2020, the date DCFS filed its Rule to Show Cause for a determination of child support. Based on the foregoing, we affirm the trial court's ruling and deny Ms. Garza's answer to the appeal.

### Docket Number 22-375 – Custody Order

### ASSIGNMENT OF ERROR

Regarding the trial court's custody order, Mr. Landry asserts that "[t]he trial court committed error by maintaining week on/week off shared custody when the mother had no residence in the State of Louisiana, no job or means to care for the child on her week." (Capitalization removed.)

### LAW AND DISCUSSION

*Standard of Review*

The trial court's judgment reflects its determination that the Texas Judgment was the result of a written agreement and informal settlement process between the parties in which no evidence was presented to the trial court. Thus, it is a "consent decree" and not a "considered decree" subject to the heightened burden of proof as required by the seminal case of *Bergeron v. Bergeron*, 492 So.2d 1193 (La.1986). When the

underlying judgment is a consent decree, "the moving party has the burden of proving that a material change in circumstances has occurred since rendition of the underlying decree, and that modification will be in the child's best interest." *Vidrine v. Vidrine*, 17-722, p. 7 (La.App. 3 Cir. 5/2/18), 245 So.3d 1266, 1273. Thus, Mr. Landry, as the moving party, had the burden of proving that a material change in circumstances had occurred since rendition of the entry of the Texas Judgment, and that the modification will be in the best interest of the child. *Id.* (citing *Evans v. Lungrin*, 97-541 (La. 2/6/98), 708 So.2d 731).

In *Vidrine*, 245 So.3d at 1273, a panel of this court discussed the role of an appellate court in its review of the trial court's determination in child custody matters and explained:

> A material change in circumstance is a change that "negatively impacts the welfare of the child." *LeBlanc v. LeBlanc*, 06-1052, p. 9 (La.App. 3 Cir. 2/14/07), 951 So.2d 500, 507. A trial court's determination of whether a material change in circumstances has occurred is a factual finding. *See Kyle v. Kier*, 17-134 (La.App. 3 Cir. 11/15/17), 233 So.3d 708; *See also Bonnecarrere v. Bonnecarrere*, 09-1647 (La.App. 1 Cir. 4/14/10), 37 So.3d 1038, *writ denied*, 10-1639 (La. 8/11/10), 42 So.3d 381. The trial court's factual conclusions are given substantial deference by appellate courts in child custody matters. *Steinebach v. Steinebach*, 07-38 (La.App. 3 Cir. 5/2/07), 957 So.2d 291. Unless there is a legal error, "[t]he determinations made by the trial judge as to custody [ ] will not be set aside unless it clearly appears [from the record] that there has been an abuse of discretion." *Nugent v. Nugent*, 232 So.2d 521, 523 (La.App. 3 Cir. 1970). *See also Mulkey v. Mulkey*, 12-2709 (La.5/7/13), 118 So.3d 357. "The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts." *McCorvey v. McCorvey,* 05-174, p. 4 (La.App. 3 Cir. 11/2/05), 916 So.2d 357, 362, *writ denied*, 05-2577 (La. 5/5/06), 927 So.2d 300.

*Modification as to Physical Custodial Arrangement*

In its Written Reasons for Judgment, the trial court explained that the Texas Judgment provided for "joint legal custody and periods of physical custody agreed

on by the parties or set forth in the Standard Possession Order." The trial court further stated that the Standard Possession Order provided "that each parent will have physical custody of Brooklyn every other week beginning at 3:00 p.m. on Fridays." The trial court noted that this part of the Texas Judgment, the Standard Possession Order, presented a material change in circumstances, since Brooklyn had been enrolled in school in Negreet, Louisiana[6] since August of 2021, having reached the age of five years.

As characterized by the trial court, the Texas Judgment presented two "scenarios" of physical custody after Brooklyn reached the age of five years or was enrolled in school. The first scenario required Ms. Garza to live within "30 miles of the child[.]" This scenario would give Ms. Garza the right to continue the shared custody of every other week, "'so long as that possession is exercised in the area in which the child attends school.'"

In the second scenario, Ms. Garza's possession would not require a restriction to the area where Brooklyn attends school, but would be limited to the 1st, 3rd, and 5th weekends of the month, from 6:00 p.m. on Friday to 6:00 p.m. on Sunday, during the regular school year. The pickup and drop off would occur at Mr. Landry's home in Many, Louisiana.

The trial court modified the Texas Judgment by eliminating a portion of the requirements in the above stated scenarios. Specifically, the modification included the following, "**Ms. Garza is entitled to continue the every-other-week rotation if she exercises physical custody in the State of Louisiana.**"

---

[6] This court takes judicial notice that the Negreet, Louisiana High School, which houses grades K-12 is located 9.6 Miles from Many, Louisiana.

In eliminating the second scenario, the trial court explained that "Ms. Garza's repeated failure to comply with the Texas Judgment," represented "a material change in circumstances such that this modification is in the best interest of the child." When the Texas Judgment was rendered in 2018, "Ms. Garza definitively lived in Rio Grande City, Texas, and Mr. Landry definitively lived in Many, Louisiana, which are over 500 miles apart." The trial court found that it would be "totally impractical" for Ms. Garza to try and exercise custody on three weekends a month without any restrictions on her geographic location.

The trial court's concern was based on evidence presented in the record that Ms. Garza had repeatedly failed to timely return Brooklyn from visits in Texas according to the schedule.

However, now that Brooklyn had enrolled in school in Negreet, Louisiana, the trial court found that it was "especially important to ensure that Ms. Garza does not travel 1,000 miles round trip with Brooklyn to exercise one weekend of visitation," and have Brooklyn possibly miss school, which would be the result of scenario two.

As for modification of scenario one, the trial court further found that "Ms. Garza's living arrangements represent[ed] a material change in circumstances such that this modification is in the best interest of the child." At the time of the hearing, the trial court explained, Ms. Garza essentially resided in both Rio Grande City, Texas and Many, Louisiana.

We note, however, that initially it was Mr. Landry who chose to leave his home in Texas and move to Many, Louisiana, making it extremely difficult for Ms. Garza to exercise her weekly custodial time with her daughter. Nevertheless, the evidence demonstrated that she tried her best to do so, albeit returning the child late

13

on several occasions. Mr. Landry's move occurred prior to the Texas Judgment, and she had no other choice.

In August of 2021, however, Brooklyn was enrolled in school in Negreet, Louisiana and Ms. Garza began regularly traveling to Louisiana, some five hundred miles each way, living in a high-end, fully equipped travel trailer during her weeks of physical custody, all exercised near Many. Ms. Garza also testified that she recently began renting an apartment in Many, Louisiana.

The trial court explained that once Brooklyn was enrolled in school, the Texas Judgment required that Ms. Garza must "live[] within 30 miles of the child[,]" in order to continue the weekly custody rotation. The trial court found that, despite maintaining her legal residence in Texas, Ms. Garza had been providing a "safe and wholesome environment and ensuring Brooklyn [was attending] school during her periods of physical custody" in Many, Louisiana.

Therefore, we find the trial court did not abuse its discretion in finding that "as long as Ms. Garza keeps Brooklyn in the [S]tate of Louisiana," the joint custody arrangement would continue.

*Best Interest of the Child - Louisiana Civil Code Article 134*

The trial court specifically found for written reasons "that continuing this arrangement with this modification is in the best interest of the child." First, the trial court found that "both parties demonstrated that they love and care for Brooklyn, and that they are involved in her schooling and medical care." *Citing* La.Civ.Code art. 134(A)(2) & (4).[7] Further, the trial court found that both parties agreed "that

---

[7] Louisiana Civil Code Article 134(A) provides "Factors in determining child's best interest," including: "(2) The love, affection, and other emotional ties between each party and the child[,]" and "(4) [t]he capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs."

Brooklyn has been attending school in Negreet, Louisiana, and Ms. Garza has been exercising visitation in Many, Louisiana since August 2021." *Citing* La.Civ.Code art. 134(A)(10) & (14).[8] Most importantly, the trial court found that the "equal custody arrangement has been in place since December 2018, half of this six-year old child's life." *Citing* La.Civ.Code art 134(A)(5).[9] Additionally, Louisiana has a "long-standing and codified preference for joint custody." *Citing* La.Civ.Code art. 132; *See also* La.R.S. 9:335(A)(2)(b).

The trial court discussed the claims alleged by both Mr. Landry and Ms. Garza, which they respectively maintained warranted a material change in circumstances. By his argument, Mr. Landry sought sole custody of Brooklyn, whereas Ms. Garza sought to be named the domiciliary parent. Those allegations had earlier prompted the trial court to appoint Dr. Simoneaux to evaluate both parties.

In his custody recommendations following his Court ordered appointment, Dr. Simoneaux expressed concern about a relationship Ms. Garza might have with a man who had not been part of his evaluation. Mr. Landry had previously objected to Brooklyn being in this man's presence. Ms. Garza testified that the man worked off (shore) and that "the relationship was not serious." Although Dr. Simoneaux testified that the alleged relationship troubled him, any opinion he could give as to why the man would not appear for an evaluation would be pure speculation. Additionally, there was no evidence admitted at the hearing confirming that Ms.

---

[8] Louisiana Civil Code Article 134(A) provides further pertinent factors as follows: "(10) The home, school, and community history of the child[,]" and "(14) [t]he responsibility for the care and rearing of the child previously exercised by each party."

[9] Louisiana Civil Code Article 134(A)(5) requires consideration of "[t]he length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment."

Garza was still in a relationship with this man, or anyone else, or that the man has a criminal history as alleged.

The trial court explained that Dr. Simoneaux described Ms. Garza as "highly-sensitive, impulsive, and prone to paranoia and delusions." He was also concerned with Ms. Garza's "lack of adherence to court orders and the fact that she had not relocated to be closer to Brooklyn." We again note, however, that it was Mr. Landry's decision to move to Many, Louisiana. The trial court remarked that, with regard to Mr. Landry's specific allegation that Ms. Garza abuses alcohol, Dr. Simoneaux did not administer a test related to alcohol abuse, but expressed little concern.

The trial court reported, however, that Dr. Simoneaux "expressed concern over Mr. Landry's criticism of Ms. Garza and [his] obsession with money." However, Mr. Landry admitted in his interview with Dr. Simoneaux that Ms. Garza was a good mother.

In regard to Ms. Garza's allegations that "Mr. Landry has abused [her] and/or Brooklyn, Dr. Simoneaux expressed little concern." The trial court determined that Dr. Simoneaux stated "that Mr. Landry did not show signs of psychological problems that would support the grave allegations of abuse."

In conclusion, after reviewing Dr. Simoneaux's recommendations, the trial court found as follows:

> In the face of these problematic behaviors and the rather tumultuous relationship between the parents, Dr. Simoneaux repeatedly expressed the importance of the involvement of both parents in Brooklyn's life, as well **as his belief that the equal physical custody schedule should remain in place. He made clear "[he has] no doubt that both of them very much love this child."** In fact, Dr. Simoneaux suggested that the parents live on the same property to facilitate their shared custody arrangement. Therefore, while the Court acknowledges that concerning events and

16

behaviors have arisen in this family in the past, particularly with respect to Ms. Garza, **the Court continues the shared custody arrangement the parties have followed since the Texas judgment was rendered, with Ms. Garza to exercise physical custody in Louisiana.**

(First emphasis added.) (Alteration in the original.)

Mr. Landry argues that the trial court committed legal error by finding that joint custody was to be maintained, especially in light of Ms. Garza's alleged failure to establish a legal residence in Louisiana, and her not having sufficient resources to support Brooklyn during her weeks of physical custody. We do not agree. We here note that if Mr. Landry had followed the Court Order for child support in Docket Number 22-374 discussed infra, Ms. Garza would have had sufficient income and resources. He certainly had more than sufficient resources to do so.

As seen above, the trial court's ruling does not require Ms. Garza to establish a permanent legal residence in Louisiana, only that Ms. Garza's physical custody of Brooklyn was to be exercised in Louisiana. It does not go unnoticed that Ms. Garza had to resort to having DCFS sue Mr. Landry for a determination of child support, which led to a finding that he was substantially in arrears in the amount of $45,595.24, as determined by the District Court Hearing Officer, and as of this date the amount due is approximately $69,792.52.[10] This is especially troubling given the District Court Hearing Officer's observation that Mr. Landry's average monthly income was conservatively found to be $57,064.00.

Based on the ruling of the trial court in the child support dispute, and assuming that Mr. Landry actually pays the support ordered, Ms. Garza should now have sufficient resources to support Brooklyn during her weeks of physical custody in a

---

[10] This amount included two payments of $800.00 the Hearing Officer found was paid by Mr. Landry toward his child support obligation.

suitable residence. The record reflects that despite the hardships imposed by the lack of child support, and her lack of sufficient resources, Ms. Garza has maintained a close and loving relationship with Brooklyn since 2018 when Mr. Landry moved with Brooklyn to Louisiana. We therefore leave the trial court's custody arrangement undisturbed.

## DECREE

For the foregoing reasons the trial court's Final Judgment, in Docket Number 22-374, dated February 14, 2022, setting the amount of child support payments due from Mr. David Landry for his minor daughter, Brooklyn Taylor Landry, at $3,049.66 per month, retroactive to October 23, 2020 is affirmed in its entirety. We assess legal interest from October 23, 2020 on all arrears until paid. In addition, the trial court's Judgment, in Docket Number 22-375, also dated February 14, 2022, modifying the Texas Judgment with respect to a determination of shared child custody for the minor child, Brooklyn Taylor Landry, is also affirmed in its entirety. All costs of this appeal are assessed to Mr. David Landry.

**AFFIRMED.**